**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**ROSE ALLEN** **CIVIL ACTION**

**VERSUS** **NUMBER 08-0046-FJP-DLD**

**MICHAEL J. ASTRUE COMMISSIONER OF SOCIAL SECURITY**

**REPORT AND RECOMMENDATION**

Plaintiff Rose Allen seeks judicial review of a final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her claim for disability insurance benefits ("DIB") and supplemental security income (SSI).

***Background***

On May 5, 2004, plaintiff filed her application for SSI, and on July 13, 2004, she filed an application for DIB, claiming a disability onset date of September 7, 2000, due to migraine headaches, back pain, and numbness in her feet and legs. (Tr. 22, 63-68, 70). The claims were denied initially on September 30, 2004. After filing a timely request for hearing, the administrative hearing was held via video conference on April 19, 2007. When questions arose regarding her disability onset date during the hearing, plaintiff and her counsel amended her disability onset date to April 22, 2004. (Tr. 364)

On July 27, 2007, the ALJ issued an administrative decision, denying both applications for benefits. In reaching her decision at step four of the evaluation process, the ALJ relied upon the testimony of a vocational expert, and specifically determined that the plaintiff could do her past relevant work as an office manager and as an accounting clerk. At step one, the ALJ determined that plaintiff had not engaged in substantial gainful

activity since her alleged onset date of April 22, 2004. At step two, the ALJ determined that plaintiff's back disorder and pain, fibromyalgia, and headaches were medically determinable impairments that were severe. At step three, the ALJ found that plaintiff's impairments or combination of impairments did not meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4 during the relevant time period. At step four, turning to plaintiff's RFC, the ALJ found that during the relevant time period, plaintiff had the residual functional capacity to lift and carry 10 pounds occasionally and less than 10 pounds frequently; to stand and/or walk for two hours in an eight-hour workday; and to sit for six hours in an eight-hour workday. The ALJ also found that the plaintiff had the residual functional capacity to occasionally climb ramps and stairs, as well as balance and stoop, but her ability to push/pull is limited in the lower extremities, and she could not kneel, crouch, crawl or climb ropes, ladders or scaffolds. Regarding plaintiff's mental conditions, the ALJ found that the plaintiff had mild restrictions in activities of daily living, mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation. (TR 26) At the time of the hearing, plaintiff was 49 years old.

Based on these findings, the record evidence, and the hearing testimony,the ALJ determined that plaintiff could have returned to her past relevant work, and that this past relevant work did not require the performance of work-related activities precluded by plaintiff's residual functional capacity.[1] Thus, the ALJ concluded that plaintiff was not disabled as defined in the Social Security Act.

[1] "Residual Functional Capacity (RFC) is defined as 'the most you can still do despite your limitations.'" 20 C.F. R. § 416.945(a)(1).

The plaintiff appealed the unfavorable decision, and the appeal was denied by the Appeals Council on December 4, 2007, making the ALJ's decision the final decision of the Commissioner for purposes of this court. Plaintiff filed suit on January 23, 2008.

***Governing Law***

The Social Security Act provides for the payment of benefits to persons who have contributed to the program and "who suffer from a physical or mental disability." *Loza v. Apfel*, 219 F.3d 378, 390 (5th Cir. 2000), *citing* 42 U.S.C. § 423(a)(1)(D)(1991). As used in the Act, the term "disability" is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period not less than twelve months. *Id*., *citing* 42 U.S.C. § 423(d)(1)(A); *Bowen v. Yuckert*, 482 U.S. 137, 140, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1987).

To determine whether a disability exists for purposes of the Act, the Commissioner must weigh the following elements of proof: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991).

In reviewing the Commissioner's decision to deny disability benefits, this Court is limited to a determination of whether the Commissioner's decision was supported by substantial evidence existing in the record as a whole and whether the Commissioner applied the proper legal standards. *See, e.g., Harrell v. Brown*, 862 F.2d 472, 475 (5th Cir. 1988). Substantial evidence means more than a scintilla, but less than a preponderance,

and is such relevant evidence as a reasonable mind might accept to support a conclusion. *Id*.

In applying this "substantial evidence" standard, the Court must carefully scrutinize the record to determine if, in fact, substantial evidence supporting the decision does exist, but the Court may not re-weigh the evidence in the record, nor try the issues *de novo*, nor substitute its judgment for the Commissioner's even if the evidence preponderates against the Commissioner's decision. *Id.* A finding of "no substantial evidence" will be made only where there is a conspicuous absence of credible choices or an absence of medical evidence contrary to the claimant's position. *Id*.

However, the substantial evidence standard of review is not a mere rubber stamp for the Commissioner's decision, and it involves more than a search for evidence supporting the Commissioner's findings. *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). The Court must scrutinize the record and take into account whatever fairly detracts from the substantiality of evidence supporting the Commissioner's findings. *Id.*

Disability is determined by the five-step sequential analysis set forth in 20 C.F.R. §§ 404.1520, 416.920.[2] At steps one through four, the overall burden of proving disability under the Social Security Act rests on the claimant. *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1985). A finding that a claimant is disabled or not disabled at any step in the five-step process terminates the Commissioner's analysis. *Boyd v. Apfel,* 239 F.3d 698, 705

[2] *See also, Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995), wherein the Fifth Circuit explained that "the five-step analysis requires the Commissioner to consider: 1) whether the claimant is presently engaging in substantial gainful activity, 2) whether the claimant has a severe impairment, 3) whether the impairment is listed, or equivalent to an impairment listed in appendix I of the regulations, 4) whether the impairment prevents the claimant from doing past relevant work, and 5) whether the impairment prevents the claimant from performing any other substantial gainful activity." The five-step inquiry terminates if the ALJ finds at any step that the claimant is or is not disabled. *Id.*

(5th Cir. 2001.)

*Points of Error*

Plaintiff presents two grounds for reversible error. She first asserts that the ALJ committed reversible error in failing to obtain an updated medical expert opinion regarding medical equivalency (her headaches) as required by Social Security Ruling 96-6p. She next asserts that the ALJ failed to provide specific findings or analysis regarding the physical and mental demands of her past relevant work as required by Social Security Ruling 82-62. (rec. doc. 14) and suggests that plaintiff could not meet the mental demands of her past employment.

***DISCUSSION AND ANALYSIS***

The court's role in this appeal is to determine whether the Commissioner's finding that plaintiff was not disabled is supported by the substantial evidence and was reached by applying the proper legal standards. 42 U.S.C. § 405(g). The court confines its discussion to the issues raised by the plaintiff, who is represented by counsel.

The first issue concerns the necessity of an updated medical opinion from a medical expert. Plaintiff relies on SSR 96-6p which reads, in pertinent part, as follows:

> . . .
>
> When an administrative law judge or the Appeals Council finds that an individual's impairment(s) is not equivalent in severity to any listing, the requirement to receive expert opinion evidence into the record may be satisfied by any of the foregoing documents signed by a State agency medical or psychological consultant. *However, an administrative law judge*

*and the Appeals Council must obtain an updated medical opinion from a medical expert*[3] *in the following circumstances*:

* When no additional medical evidence is received, but in the opinion of the administrative law judge or the Appeals Council the symptoms, signs, and laboratory findings reported in the case record suggest that a judgment of equivalence may be reasonable; or

* When additional medical evidence is received that in the opinion of the administrative law judge or the Appeals Council may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments.

Under this regulation, there are only two circumstances under which an updated medical opinion is required. Since plaintiff pointed to no additional medical evidence that could have triggered the need for an updated medical opinion, plaintiff is left with only the first option under SSR 96-6p - that the medical evidence in the record suggests medical equivalency, which is the option that plaintiff apparently has chosen to argue.[4]

Plaintiff argues that migraine headaches are medically equivalent to seizures, and as support for her argument, she points to draft legislation relating to a proposal to add a new medical listing, 11.20, regarding migraines. She further notes that migraine headaches are recognized as a disability by the U.S. government in the Veterans Affairs Schedule for Ratings Disability. (TR 9) However, plaintiff failed to argue medical equivalency at the administrative hearing, even when given the chance to question the VE;

---

[3]The term "medical expert" is being used to refer to the source of expert medical opinion designated as a "medical advisor" in 20 CFR 404.1512(b)(6), 404.1527(f), 416.912(b)(6), and 416.927(f). This term is being used because it describes the role of the "medical expert" as an expert witness rather than an advisor in the course of an administrative law judge hearing.

[4] Plaintiff made generic statements that additional medical evidence required updated medical opinions, but she failed to point to any such evidence or relate that principle to the facts of this case.

the Veterans Affairs Schedule is not applicable in a Social Security case; and medical

listing 11.20 did not exist at the time of the hearing nor does it exist now.

Regardless of the VE regulations or any proposed listing in draft legislation, plaintiff

always has the burden of proving that her impairments meet or equal a listed impairment,

and in connection with that burden, plaintiff "must provide medical findings that support

each of the criteria" of a listed impairment.  *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir.

1990).  Here, plaintiff argues that her migraine headaches are medically equivalent to

Listing 11.03, which reads as follows:

> **11.03 *Epilepsy - nonconvulsive epilepsy (petit mal, psychomotor, or focal)*, documented by detailed description of a typical seizure pattern including all associated phenomena, occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment**. With alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day.

Additional required criteria is found in the general category, Listing 11.00 - Neurological,

as follows:

> A. *Epilepsy.* In epilepsy, regardless of etiology, degree of impairment will be determined according to type, frequency, duration, and sequelae of seizures. **At least one detailed description of a typical seizure is required.** Such description includes the presence or absence of aura, tongue bites, sphincter control, injuries associated with the attack, and postictal phenomena. The reporting physician should indicate the extent to which description of seizures reflects his own observations and the source of ancillary information. Testimony of persons other than the claimant is essential for description of type and frequency of seizures if professional observation is not available.
>
> **Under 11.02 and 11.03, the criteria can be applied only if the impairment persists despite the fact that the individual is following prescribed antiepileptic treatment.** Adherence to prescribed antiepileptic therapy can ordinarily be determined from objective clinical findings in the report of the physician currently providing treatment for epilepsy. Determination of blood

> levels of phenytoin sodium or other antiepileptic drugs may serve to indicate whether the prescribed medication is being taken. . . (emphasis added).

However, "[a] claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall *functional impact* of her unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Sullivan v. Zebley,* 493 U.S. 521, 531, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990). In this case, plaintiff has not pointed to medical findings that her migraine headaches are at least equal in severity to all the criteria in Listing 11.03, which also includes the general criteria contained within Listing 11.00. Plaintiff's arguments center more on the functional impact of her migraines as being medically equivalent to nonconvulsive epilepsy, but that argument fails when the facts found by the ALJ are used in the analysis rather than the "facts" suggested by the plaintiff.

Thus, although plaintiff approaches the implications of her migraine headaches as a "listing" issue (i.e., that the ALJ should have found that the headaches were medically equivalent to Listing 11.02 or 11.03 (the seizure listings)), her main, underlying contention appears to be that the ALJ did not properly evaluate her subjective complaints regarding the extent and severity of her headaches and failed to make the requisite credibility findings when she rejected plaintiff's testimony. The severity and frequency of the headaches in this case thus boils down to a credibility issue for the ALJ to decide. Plaintiff cannot buttress her listing argument by using "facts" that were not found, as long as the ALJ's findings on those facts are supported by substantial evidence.

In making a credibility determination, the ALJ must make affirmative findings regarding a plaintiff's subjective complaints. *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir.1994) (citing *Scharlow v. Schweiker*, 655 F.2d 645, 648- 49 (5th Cir.1981)) The plaintiff

testified that her headaches were of terrible severity and frequency, sometimes causing her to lie in a darkened room as much as two days a week.  Clearly, she could not work if she were to miss work as much as one or two days a week.  These facts, however, are not the facts found by the ALJ.  Here, the ALJ  found that while the plaintiff's medically determinable impairments could "reasonably be expected to produce the alleged symptoms," the plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (TR 27).

In reaching this conclusion, the ALJ acknowledged that the plaintiff sought treatment numerous times for her headaches/migraines, but noted that plaintiff reported that the medications worked to relieve her headaches, and that at one point, she  used only six pain tablets per month.  The medical record is devoid of evidence that the headaches prevented her from working, or that they were of such severity as to be disabling.  The medical opinions by plaintiff's treating physicians or by any other medical provider contain no diagnosis or comment that plaintiff's headaches were severe or disabling or that migraine headaches substantially limited her ability to perform vocational activities on a sustained basis. The physicians simply noted that plaintiff complained of headaches, but no follow-up treatment, except for pain medication, was noted in her records. Plaintiff also self-reported that the medications worked, or were helping her.

More specifically, a review of the medical evidence submitted in connection with plaintiff's administrative hearing further supports the ALJ's findings.  For example, in 1999, plaintiff reported her headaches were mild and never severe when taking Effexor. (TR 243) In 2000, plaintiff was diagnosed with "occipital neuralgic cervicogenic headaches" by

neurologist Gary Zoltain.  (TR 252). In April 2004, just two weeks before her alleged disability onset date of April 22, 2004, plaintiff reported that Midrin helped her headaches, that the headaches were occurring just 2-3 times per month, and that overall "they are better."  (TR 272) In July 2004, almost 3 months after her alleged disability onset date, plaintiff reported that her headaches were "dull in nature."  (TR 270) On May 27, 2005, plaintiff stated the Inderal decreased her headaches, and Midrin and Fiorcet halted them. (TR 338)  On May 1, 2006, plaintiff reported that the headaches still bothered her, but the medications helped.  (TR 324)

        This countervailing evidence in the medical records,  which is at odds with plaintiff's testimony regarding the severity and frequency of her headaches, provides sufficient evidence to support the ALJ's credibility determination regarding plaintiff's complaints, and the ALJ thus adequately explained her reasons for rejecting plaintiff's subjective complaints about her headaches.  *Falco*, 27 F.3d at 164.  Thus, since the debilitating effects of the headaches are the record evidence plaintiff depends upon in support of her "listing" argument, that argument must fail based on the credibility determination reached by the ALJ with regard to the severity and frequency of plaintiff's headaches.

        Plaintiff therefore has failed to make any showing whatsoever that the ALJ made an error either in failing to find that the plaintiff satisfied a medical equivalence listing or in failing to obtain an updated medical expert opinion.

        In the next issue raised by plaintiff, she complains that the ALJ failed to provide specific findings or analysis regarding the physical and mental demands of her past

relevant work, and that plaintiff could not meet the mental demands of this work.[5] Social Security Ruling 82-62 requires that where the ALJ has determined that the claimant retains the capacity to perform a past relevant job, her decision must contain the following specific findings[6]:

1. A finding of fact as to the individual's RFC.
2. A finding of fact as to the physical and mental demands of the past job/occupation.
3. A finding of fact that the individual's RFC would permit a return to his or her past job or occupation.

One obvious goal of this regulation is to make sure that the physical and mental demands of a past job correspond to the current residual functional capacity of the individual.

The plaintiff is correct that while the ALJ's decision sets out steps 1 and 3, it does not specifically discuss or address the physical and mental demands of her past relevant work in the opinion as delineated by SSR 82-62, and this is error. However, the mere presence of an error does not automatically warrant reversal, unless there is reason to believe that a remand might lead to a different result, as judicial review of the Commissioner's decision is deferential and perfect procedural decisions are not required. *Bean v. Barnhart*, 454 F.Supp. 2d 616 (E.D. Texas 2006); *Stafford v. Barnhart*, 402 F.Supp.2d 717, 724 (E.D. Tex. 2005) (citing *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir.

---

[5] Plaintiff's brief in support of appeal is quite sparse and cryptic, and it is difficult to determine just what the particulars of her argument are. Since there is no real dispute that the plaintiff's RFC, which the ALJ set out, finds she is capable of sedentary work, and plaintiff uses stress and the debilitating effects of headaches as examples of her limitations, the court, out of an abundance of caution, has treated the plaintiff's arguments as, in part, challenging the credibility findings of the ALJ

[6] Social Security Ruling: Program Policy Statement: Titles II and XVI: A Disability Claimant's Capacity To Do Past Relevant Work, In General, SSR 82-62 (1980).

1989)) Remand is only appropriate when the party is prejudiced by the error.[7] *Hall v. Schweiker*, 660 F.2d 116, 119 (5th Cir. 1981). "Similarly, an error that is in violation of a Regulation may be disregarded when a reviewing court concludes it is harmless." *Bean*, at 621. Courts will invoke the "harmless error" rule when remand would be an "idle and useless formality." *Bean, quoting NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n. 6, 89 S.Ct 1426, 1430, 22 L.Ed. 2d 709 (1969).

The first step in determining whether this error is harmless, then, is to determine the demands of plaintiff's former employment as an office manager and then compare those demands to the plaintiff's RFC.[8] Such a determination may rest on descriptions of past work as actually performed or as generally performed in the national economy. *See Jones v. Bowen*, 829 F.2d 524, 527 n. 2 (5th Cir.1987). As actually performed, plaintiff's description of her past relevant work as an office manager was as follows:

> Accounts payable, accounts receivable, payroll, quarterly taxes, job costing, collection, correspondence, data entry, ordering material, customer service, typing filing, handling company business when owner was not available. (TR 135)

Plaintiff indicated that she did not supervise anyone (TR 136).

---

[7] Prejudice is established by showing that adherence to the Ruling might have led to a different decision. *Newton v. Apfel*, 209 F.3d 448 (5th Cir. 2000) (citing *Ripley v. Chater,* 67 F.3d 552, 557 (5th Cir. 1995)

[8] The ALJ also found that plaintiff could return to her past relevant work as an accounting clerk as actually and generally performed. However, plaintiff only worked 3 months in this position; thus, given the facts of this case, that position will be ignored for purposes of this discussion. Plaintiff's actual work as an office manager was more in keeping with the description of an accounting clerk, which explains why the ALJ included that description in her opinion.

At the hearing, the VE testified that plaintiff's past relevant work, which he classified as a sedentary,[9] skilled position (TR 386) could be found in the DOT under Code 169.167-034, which reads in pertinent part:

> TITLE(s): MANAGER, OFFICE (any industry) alternate titles: chief clerk; manager, administrative services.  Coordinates activities of clerical personnel in establishment or organization: Analyses and organizes office operations and procedures, such as typing, bookkeeping, preparation of payrolls, flow of correspondence, filing, requisition of supplies, and other clerical services. Evaluates office production, revises procedures, or devises new forms to improve efficiency of workflow. Establishes uniform correspondence procedures and style practices. Formulates procedures for systematic retention, protection, retrieval, transfer, and disposal of records. Plans office layouts and initiates cost reduction programs. Reviews clerical and personnel records to ensure completeness, accuracy, and timeliness. Prepares activities reports for guidance of management, using computer. Prepares employee ratings and conducts employee benefit and insurance programs, using computer. Coordinates activities of various clerical departments or workers within department. May prepare organizational budget and monthly financial reports. May hire, train, and supervise clerical staff. May compile, store, and retrieve managerial data, using computer. GOE: 07.01.02 STRENGTH: S GED: R4 M3 L4 SVP: 7 DLU: 8

Plaintiff's very brief position as an accounting clerk corresponded with DOT Code 216.482-010 (TR 386), which reads as follows:

> ACCOUNTING CLERK (clerical) Performs any combination of following calculating, posting, and verifying duties to obtain financial data for use in maintaining accounting records: Compiles and sorts documents, such as invoices and checks, substantiating business transactions. Verifies and posts details of business transactions, such as funds received and disbursed, and totals accounts, using calculator or computer. Computes and records charges, refunds, cost of lost or damaged goods, freight charges, rentals, and similar items. May type vouchers, invoices, checks, account statements, reports, and other records, using typewriter or computer. May reconcile bank statements. May be designated according to type of accounting performed, such as Accounts-Payable Clerk (clerical); Accounts-Receivable Clerk

---

[9] Plaintiff does not dispute the designation of sedentary or that her RFC meets the physical demands of a sedentary position. She merely argues that the ALJ committed error by not specifically stating in her opinion that the demands were sedentary, which, in this case, is harmless error.  Her focus appears to be more on plaintiff's inability to meet the mental demands of her past employment.

(clerical); Bill-Recapitulation Clerk (utilities); Rent and Miscellaneous Remittance Clerk (insurance); Tax-Record Clerk (utilities). GOE: 07.02.02 STRENGTH: S GED: R4 M3 L3 SVP: 5 DLU: 88

The position of office manager (code 169.167-034) as defined in the DOT has an SVP of 7[10] and a general educational development ("GED") of R4 (reasoning).  The reasoning development of 4 corresponds to the mental demands of the job, and is a level which encompasses the ability to apply the principles of rational systems (such as bookkeeping) to solve practical problems, deal with a variety of concrete variables in situations where only limited standardization exists, and interpret a "variety of instructions furnished in written, oral, diagrammatic, or schedule form."[11]

While the ALJ did not specifically address the mental demands of an office manager, it is clear that she took the mental demands under consideration when she determined that plaintiff could return to her past relevant work as an office manager as *actually* performed, which was more akin to an accounting clerk, than as generally performed.[12]  This determination is in keeping with plaintiff's RFC, which found that plaintiff had some mild restrictions or difficulties relating to her mental condition, and no episodes of decompensation  (TR 26).

In reaching this determination of mild restrictions and in assessing the severity of plaintiff's reported depression and complaints that stress bother her,  the ALJ used the specific analysis set forth in Section 404.1520a and 416.920a of the regulations, first

---

[10]An SVP of 7 means that training for this job takes more than 2 years and up to 4 years, and may include formal and/or informal training to become an average performed in the position. Plaintiff's argument that the SVP level equates with the mental demands of a position is without merit.

[11] Dictionary of Occupational Titles, Glossary of Terms.

[12] An SVP of 5 means that training for this job takes from 6 months to 1 year to become an average performer in the position.

considering the diagnostic characteristics of the impairment and then the functional limitations of that impairment.  The ALJ found that there was a medically determinable impairment of depression and anxiety, consistent with Listings 12.04 and 12.06.  (TR 25)  The medical records show that the plaintiff underwent psychiatric evaluations on December 9, 2002, and September 22, 2004, during which she reported medical problems relating only to her back, and specifically stated that she  had "never had psychiatric problems, mental problems, problems with her mind, emotional problems, 'nerve problems'" (TR 264) and when asked about any mental, emotional, or psychiatric symptoms at the second evaluation, plaintiff responded that she had none, except that she gets "somewhat frustrated because she can't do some things that she wants to do."  There is therefore nothing in the medical evidence to suggest that stress was an issue for her, beyond that which is normal for anyone, and there is no evidence of any medication being prescribed for any mental or psychological condition, or, indeed, that she had any severe limitations that could be characterized as a "mental condition."

Insofar as plaintiff appears to argue that her headaches are a "mental condition" precluding her from working as an office manager, as discussed earlier, the medical evidence does not reflect that plaintiff reported to her physicians that her headaches left her incapacitated to the point where she could not work, and there is no medical evidence that any physician placed any limitations on her ability to work as the result of headaches. Further, the plaintiff's daily activities of occasionally shopping, attending twice weekly meetings, doing household chores 3-4 times a week, and taking care of her own personal needs suggest that her concentration and memory (the mental demands) are consistent with her RFC.

The ALJ thus found that while plaintiff had some mild limitations due to her mental conditions (as referenced in the RFC), these limitations were not severe. (TR 26) And if there is no mental impairment that affected plaintiff's ability to work, the fact that the ALJ did not specifically address the mental demands of plaintiff's past work did not prejudice the plaintiff as the outcome would not have changed but for this error.  It is therefore a harmless error.[13]

In summary, all of the issues raised by the plaintiff ultimately rest on the validity of the credibility findings of the ALJ.  The debilitating effects of the headaches are the record evidence plaintiff depends upon in support of her "listing" argument, and that argument must fail based on the credibility determination reached by the ALJ with regard to the severity and frequency of plaintiff's headaches.  Because that argument fails, no updated medical expert opinion was necessary.

The ALJ 's determination that the plaintiff did not have anything more than "mild restrictions in activities of daily living, mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation" is likewise supported by substantial evidence and meets the mental demands of office manager as actually performed; thus, any failure to adhere to Ruling 82-62 is harmless error.  On the objective medical evidence presented in this case, the ALJ acted well within her discretion in concluding that plaintiff's subjective complaints were not of a disabling severity.  E.g., *Harrell*, 862 F.2d at 479-82; *Dominick v. Bowen*, 861 F.2d 1330, 1333 (5th Cir. 1988); *Hollis v. Bowen*, 837 F.2d 1378, 1384- 85 (5th Cir. 1988).The

---

[13]  The plaintiff did not directly challenge the RFC or that anyone with plaintiff's RFC could not perform the job of office manager as actually performed by plaintiff.  However, the plaintiff argued facts that were not compatible with the RFC or with the credibility findings of the ALJ; thus the court has primarily addressed the underlying premise of plaintiff's arguments, which go to the severity, persistence, and frequency of the symptoms which arise from her impairments.

ALJ's determination is therefore supported by substantial evidence and will not be disturbed.

### ***Conclusion***

Accordingly, it is the recommendation of the magistrate judge that the decision of the Commission denying benefits be **AFFIRMED**, and the plaintiff's complaint be **DISMISSED** with prejudice**.**

Signed in Baton Rouge, Louisiana, on September 30, 2009.

**MAGISTRATE JUDGE DOCIA L. DALBY**

**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| **ROSE ALLEN** | **CIVIL ACTION** |
| **VERSUS** | **NUMBER 08-0046-FJP-DLD** |
| **MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY** | |

NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U.S. District Court.

In accordance with 28 U.S.C. §636(b)(1), you have ten days from date of receipt of this notice to file written objections to the proposed findings of fact and conclusions of law set forth in the Magistrate Judge's Report. A failure to object will constitute a waiver of your right to attack the factual findings on appeal.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on September 30, 2009.

**MAGISTRATE JUDGE DOCIA L. DALBY**